UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ALLEN
WALKER,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

Case No. 2:18-cv-10483

District Judge Arthur J. Tarnow

Magistrate Judge Anthony P. Patti

## <u>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 17), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 18), AND REMAND THIS MATTER TO THE COMMISSIONER</u>

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (DE 17), **DENY** Defendant's motion for summary judgment (DE 18),

**REVERSE** the Commissioner's decision, and **REMAND**  this case to the

Commissioner and the ALJ under Sentence Four of § 405(g) for further

development and consideration consistent with the report below.

**II.     REPORT**

      Plaintiff, Steven Allen Walker, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 17), the Commissioner's cross-motion for summary judgment (DE 18), Plaintiff's reply (DE 20), and the administrative record (DE 13).

## A.    Background and Administrative History

Plaintiff protectively filed his application for DI benefits on November 13, 2014, alleging that he has been disabled since October 31, 2014, at the age of 41. (R. at 136-37.)[1]  In his February 2015 disability report, he states that he is limited in his ability to work because he has osteoarthritis in both hips, both shoulders need surgery, and he had replacement of right hip-surgery.  (R. at 171.)  His application was denied on May 8, 2015.  (R. at 63-73, 76-85.)

On May 15, 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 86-87.)  On September 22, 2016, ALJ Roy E. LaRoche held a hearing, at which Plaintiff and a vocational expert (VE), Diane Regan, testified. (R. at 29-62.)  ALJ LaRoche issued an opinion on December 20, 2016, which

---

[1] There is also a subsequent application for DI benefits in the record dated February 18, 2015, which reflects that Plaintiff claimed December 17, 2014 as his onset date.  (R. at 140-41.)  In the Disability Determination Explanation, the SSA seemingly combined these two applications, taking the application date from the first application and the alleged onset date from the second.  (R. at 64-65.) Presumably the SSA was mistaken or typed it in incorrectly.  The ALJ repeats the apparent error. (R. at 12.)

2

determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-28.)

On December 21, 2016, Plaintiff submitted a request for review of the hearing decision/order.  (R. at 134-35.)  However, on November 14, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ LaRoche's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 9, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 280 pages of medical records, which were available to the ALJ at the time of his December 20, 2016 decision.  (R. at 346-625 [Exhibits 1F – 10F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 17, 2014.  (R. at 14.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  obesity; degenerative joint disease of the bilateral hips, status post right total hip arthroplasty; ACL tear of the left shoulder, status post reverse total arthroplasty; and, osteoarthritis of the bilateral knees, status post bilateral

3

arthroscopy.  (*Id*. at 14-15.)  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id*. at 15-16.)  **Between Steps 3 and 4**

of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a),
> except [he] must have the ability to alternate between sitting and
> standing at the workstation not more frequently than every 20 minutes;
> can never climb ladders, ropes or scaffolds; can occasionally climb
> ramps and stairs, balance and stoop; can never kneel, crouch or crawl;
> can frequently reach with the bilateral upper extremities, but can never
> reach above shoulder level.

(*Id*. at 16-22.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 22.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 23.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from December 17, 2014, through

the date of the decision.  (*Id*. at 24.)

### D.    Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

 In his motion for summary judgment, Plaintiff makes three claims of error:

(1) this case was reviewed only by a single decisionmaker (SDM) on behalf of the

state agency and thus the ALJ erred in rendering a Step 3 equivalency

determination without any medical opinion support; (2) the ALJ's RFC is not

supported by substantial evidence; and, (3) the ALJ erred by finding that Plaintiff's

symptoms were not consistent with the record evidence.  (DE 17 at 2, 14-26.)  The

Commissioner opposes Plaintiff's motion and contends that: (1) the lack of a

medical opinion regarding equivalency can be deemed harmless error; (2) the

ALJ's RFC is supported by substantial evidence and did not have to be based on a

medical opinion; and (3) the ALJ appropriately discussed the evidence in declining to accept Plaintiff's allegations of disabling symptoms.  (DE 18 at 7-18.)

### 1.    The ALJ's Step 3 finding

The ALJ's decision initially noted that Plaintiff's representative argued in his brief and at the hearing that Social Security Ruling (SSR) 96-6p requires the ALJ to obtain an opinion from a medical expert stating whether or not the Plaintiff medically equals any listing.  (R. at 12, citing R. at 62, 202.)  ALJ LaRoche opined, however, that "[w]hile adjudicators must obtain an opinion from an acceptable medical source when they are *approving* benefits by finding medical equivalence to a listing or listings, *no medical source opinions are required when making the finding that the claimant's impairments do not medically equal a listing or listings*." (R. at 12 (emphases added), citing 20 C.F.R. §§ 404.1526, 404.1527(2)(iii); SSR 96-6p.)

The ALJ then found at Step 3 of the sequential analysis that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  (*Id.* at 15-16.)  Specifically, he found that Plaintiff's "severe impairments do not meet the criteria of any listed impairment," "paying particular attention to listing 1.02 [Major dysfunction of a joint]."  (*Id.*)  He further found, "consider[ing] [Plaintiff's] obesity, in combination with [Plaintiff's] other impairments," that "[t]he evidence in the instant case does

7

not establish that [Plaintiff's] obesity causes any other impairment to meet *or medically equal* a listing." (*Id.* (emphasis added).)

> **2.    The ALJ's Step 3 equivalency finding is not supported by substantial evidence**
>
> **a.    The ALJ failed to obtain a medical opinion on equivalency**

The ALJ found that Plaintiff's impairments to do not meet a listing, "paying particular attention to listing 1.02." (R. at 15.)  The determination of whether Plaintiff's impairments *meet* a listing is "well within the ALJ's purview." *See Hagan v. Comm'r of Soc. Sec.*, No. 16-14022, 2018 WL 1354472, at *9 (E.D. Mich. Feb. 23, 2018), *report and recommendation adopted*, 2018 WL 1326294 (E.D. Mich. Mar. 15, 2018).  However, as explained further below, the ALJ erred when he concluded that Plaintiff's impairments, alone or in combination, do not medically equal any listing, without the benefit of any medical opinion on equivalency. *See id.* at *10 ("The Commissioner is required to have a medical opinion to support the equivalence analysis.")  Here, this case was only reviewed by a single decision-maker, and not by a qualified medical advisor.  (See R. at 71.)

Contrary to the ALJ's assertion in his opinion that a medical opinion on equivalency is only required when "approving benefits by finding medical equivalence" (R. at 12), the great weight of authority holds that the Commissioner is always required to have a medical opinion to support the equivalency analysis.

As the Sixth Circuit noted in *Retka v. Commissioner of Social Security*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995), "[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made." (citing 20 C.F.R. § 416.926(b)).  *See also, e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Modjewski v. Astrue*, No. 11-C-8, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*, 987 F.Supp.2d 135, 148 (D.N.H. 2012) (explaining that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter) (citing *Galloway v. Astrue*, No. H-07-01646, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).  Courts in this district have held similarly.  *See, e.g., Snoddy v. Comm'r of Soc. Sec.*, No. 17-11161, 2018 WL 5095050, at *7 (E.D. Mich. Aug. 13, 2018) (Davis, M.J.) ("The Commissioner is

required to have a medical opinion to support the equivalency analysis."), *report and recommendation adopted*, 2018 WL 4328075 (E.D. Mich. Sept. 11, 2018) (Hood, C.J.); *Williams v. Comm'r of Soc. Sec.*, No. 15-11884, 2016 WL 7191688, at *8 (E.D. Mich. Nov. 8, 2016) (Grand, M.J.) ("Without a medical opinion on the issue of equivalency in the record, the ALJ did not follow SSR 96-6p in making his determination."), *report and recommendation adopted*, 2016 WL 7188029 (E.D. Mich. Dec. 12, 2016) (Rosen, J.).

Contrary to the ALJ's incorrect statement in his opinion, the applicable regulation and SSR both *require* that an opinion by a medical consultant be considered in making such an assessment:

> When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)). *We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner. (See § 404.1616.)*

20 C.F.R. § 404.1526(c) (emphasis added); SSR 96-6p, 1996 WL 374180 (July 2, 1996) (mandating "that the judgment of a *physician (or psychologist)* designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or Appeals Council *must be received into the record as expert opinion evidence*

and given appropriate weight") (emphases added).[3]  "Neither the ALJ nor this [C]ourt possesses the requisite medical expertise to determine if [Plaintiff's] impairments … in combination equal one of the Commissioner's listings." *Sheeks v. Comm'r of Soc. Sec.*, No. 13-13647, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23, 2015) (Duggan, J.).  The ALJ here did not obtain any opinion from a medical advisor on equivalency in this case regarding Plaintiff's multiple severe physical impairments.  The Disability Determination and Transmittal form was not signed by a physician, but only by "Lisa Walter, SDM."  (R. at 71.)[4]  "Most courts in this district agree that, when a SDM renders the initial denial, a medical opinion on the issue of equivalency is necessary at the administrative hearing stage."  *Klump v. Colvin*, No. 14-12428, 2016 WL 2747143, at *3 (E.D. Mich. Apr. 26, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 2986366 (E.D. Mich. May 24, 2016).   I also agree.

Compounding the failure to obtain a medical advisor opinion on equivalence as to Plaintiff's severe physical impairments is the fact that the ALJ's approach

---

[3] The Commissioner does not address, much less attempt to defend, the ALJ's erroneous statement in his opinion that a medical source opinion is only required when "approving benefits by finding medical equivalence to a listing or listing" but not "when making the finding that the claimant's impairments do not medically equal a listing or listings."  (See R. at 12.)

[4] Under the SDM model, non-medical agency employees may render an initial denial without expert opinions on the issue of equivalency or disability.  20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).

11

appears to only partially addresses a critical component of the equivalency

analysis, namely the requirement to assess severe impairments *in combination*.  If a

claimant has more than one severe impairment (as Plaintiff does here), none of

which meet a listing singularly, the Commissioner must determine whether "the

combination of impairments is medically equal to the listed impairment." 20

C.F.R. § 404.1526(b)(3).  Here the ALJ found that Plaintiff has four severe

impairments, but beyond the conclusory heading preceding the actual discussion, it

is not clear that the ALJ considered all of Plaintiff's severe impairments *in

combination*.  While he states that "[t]he evidence in the instant case does not

establish that [Plaintiff's] obesity causes any other impairment to meet or

medically equal a listing," he does not otherwise address whether all of Plaintiff's

impairments, *in combination*, medically equal a Listing, as the regulations require.

(See R. at 16.)  *See Choate v. Comm'r of Soc. Sec.*, No. 17-10096, 2018 WL

1354471, at *10 (E.D. Mich. Feb. 24, 2018) ("While the ALJ indicated that he

considered the impact of plaintiff's obesity on each of her impairments, it does not

appear that he considered all of her severe impairments in combination, beyond the

conclusion-stating heading preceding the actual discussion."), *report and

recommendation adopted*, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018); *see also*

42 U.S.C. § 423(d)(2)(B) ("In determining whether an ... impairment or

impairments are of a sufficient medical severity such that [a finding of disability

would be warranted], the Commissioner ... shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). Again, there is no opinion from a medical advisor addressing whether Plaintiff's severe physical impairments *in combination* equal a listing. Accordingly, the ALJ's failure to obtain a medical opinion on equivalency is error.

### b.   The ALJ's error was not harmless

It is true, as the Commissioner argues, that the failure to obtain a medical opinion on equivalence "may amount to harmless error in some cases. However, the instant circumstances do not appear to qualify." *Choate*, 2018 WL 1354471, at *10. *See also, e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, No. 13-cv-12040, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014); *see also Bertuzzi v. Comm'r of Soc. Sec.*, No. 5:15-cv-11623, 2016 WL 4706935, at *7 (E.D. Mich. June 24, 2016) ("A remand is appropriate where a lay review of the record suggests that it is *plausible* that Plaintiff's impairments could medically equal a Listing."), *report and recommendation adopted*, 2016 WL 4662482 (E.D. Mich. Sept. 7, 2016). As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of [plaintiff's] psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5. In *Bukowski*, the failure to obtain a physical

13

equivalence opinion was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6.

Plaintiff here, unlike the plaintiff in *Bukowski*, has not made any such admission.  In contrast to *Bukowski*, Plaintiff here is claiming that several severe physical impairments affect his ability to work.  And, Plaintiff's medical records contain a not insubstantial number of objective medical findings concerning his impairments.  For example, an August 2014 MRI of Plaintiff's right hip showed bilateral CAM deformities of the hips, worse on the right where there is a large focal anterior bony excrescence. (R. at 368.)  A September 2014 x-ray of Plaintiff's right hip showed narrowing of the joint space with sclerosis of the articular surfaces at the weight-bearing portion, indicating osteoarthritic changes, for which Plaintiff received injections and a right total hip arthroplasty in December 2014, after all conservative treatment failed.  (R. at 352, 397-98, 433.) February 2016 MRIs of Plaintiff's knees confirmed bilateral osteoarthritis and a tear for which he underwent a partial medial meniscectomy and chondroplasty on his right knee in March 2016.  (*Id.* at 556, 558, 562, 564.)  He underwent arthroscopic partial meniscectomy, chondroplasty and total synovectomy of the left knee, along with cortisone injections to the bilateral hips in August 2016.  (*Id.* at

14

541-42.)  A 2015 MRI of Plaintiff's left shoulder showed a complete rotator cuff tear with impingement involving the acromioclavicular joint.  (*Id.* at 614.)  He received cortisone injections and then underwent an open acromioplasty of the left shoulder with distal clavicle excision and rotator cuff debridement in April 2015.  (*Id.* at 608-09.)   Plaintiff underwent a reverse left total shoulder arthroplasty in November 2015.  (*Id.* at 587-91.)  Plaintiff continued to have compromised range of motion and decreased strength in the left shoulder and was eventually discharged from physical therapy after receiving maximum benefit but minimal improvement.  (*Id.* at 567, 579.)  He continued to complain of pain and crepitus in both shoulders with limited range of motion.  (*Id.* at 506-08.)  His treating physicians opined that he could never reach overhead with his left arm and only 50% of the time with the right, walk less than one block without rest or severe pain, and that his pain is occasionally severe enough to interfere with his attention and concentration.  (*Id.* at 523-30.)

Notwithstanding the ALJ's minimal analysis on meeting the Listings, considering evidence relied on by the ALJ supporting Plaintiff's physical impairments, it cannot be said that the record is so lacking in medical findings that a finding of equivalence, when his physical impairments are considered in combination with one another, is implausible.  *See Snoddy*, 2018 WL 5095050, at *9.  The Commissioner contends in her motion that her *post hoc* analysis of the

15

"evidence shows that a remand for a medical opinion on equivalence would yield the same conclusions already reached by the ALJ" and thus any error is harmless. (DE 18 at 9-11.)  Though it is possible that Plaintiff may still ultimately be deemed not disabled after a proper equivalency evaluation, the caution in *Rabbers v. Commissioner of Social Security*, 582 F.3d 647 (6th Cir. 2009) is apt here. There, the Sixth Circuit observed that "courts generally should exercise caution in conducting harmless error review" of a Step 3 finding because harmlessness "may be difficult, or even impossible, to assess." *Id.* at 655-58. That is particularly true here because neither the ALJ nor this Court possesses the requisite medical expertise to interpret the significant medical evidence in the record to determine if Plaintiff's severe physical impairments, in combination, equal any of the applicable listings. *See Sheeks*, 2015 WL 753205, at *7 (noting "it is not the prerogative of this Court, the ALJ, or Defendant to draw conclusions about the raw medical data and how Plaintiff's severe impairments may interact with the others"); *see also Allor v. Colvin*, No. 15-14377, 2016 WL 7650798, at *6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), *report and recommendation adopted*, 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.). The objective medical findings in this case simply do not lend themselves to neat lay interpretation by the Court; and, in view of the more than minimal number of objective medical findings supporting Plaintiff's physical impairments, it is not prudent for the Court to

16

analyze equivalence in the first instance. *See Freeman v. Astrue*, No. CV-10-0328-CI, 2012 WL 384838 at *5 (E.D. Wash. Feb. 6, 2012) ("Neither the ALJ nor this court possesses the requisite medical expertise to determine if Plaintiff's impairments (including pain) in combination equal one of the Commissioner's Listing."); *Brown v. Comm'r of Soc. Sec.*, No. 12-14057, 2014 WL 222760, at *15 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (finding that plaintiff's appreciable medical findings supporting her impairments, while insufficient to meet a listing, presented sufficient evidence to suggest that a finding of medical equivalence was at least plausible, thereby necessitating a medical opinion on the issue). Thus, the error is not harmless.

### 3.    Remand under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without

17

remanding the cause for a hearing."  42 U.S.C. § 405(g).  Where there is

insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011

WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see

also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a

court determines that substantial evidence does not support the [Commissioner's]

decision, the court can reverse the decision and immediately award benefits only if

all factual issues have been resolved and the record adequately establishes a

plaintiff's entitlement to benefits." (internal quotations omitted)).

    The undersigned concludes that this matter must be remanded so that the

ALJ can obtain the opinion of a qualified medical advisor on the issue of

equivalence as to Plaintiff's physical impairments in combination.  And, given that

the opinion of a medical advisor must be obtained, Plaintiff's credibility and RFC

will necessarily need to be re-assessed in full after such an opinion is obtained.

Updated vocational expert testimony may also be necessary, based on the

conclusions of the medical advisor and the reassessment of the preceding issues. In

light of the foregoing conclusions, Plaintiff's other points of error need not be

more fully addressed.

    **F.    Conclusion**

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).  This Court and the ALJ lacked the expertise to determine whether the evidence here may medically equal a listing, and remand is required to obtain a medical opinion on equivalency.  *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp.3d 824, 830 (2017) ("For the purposes of Social Security Disability Law, ALJ Paige is as much a lay person as I am, or very nearly so."); *Nguyen v. Chater*, 172 F.3d 31, 35 ("As a lay person . . . the ALJ was simply not qualified to interpret raw medical data…").  Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 17), **DENY** Defendant's motion for summary judgment (DE 18), **REVERSE** the Commissioner of Social Security's decision, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further development and consideration consistent with this Report and Recommendation.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 19, 2019          s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

### **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
